Thank you, Your Honor. With the Court's allowance, I would like to reserve three minutes for rebuttal. Good morning. May it please the Court. Eric Pasternak on behalf of Objectors James Kirkham and Matthew Sessoms. Of course, it would have been possible to simply mail checks out to the people on a class list. Those are not my words. Those are the plaintiff's words, and that should have been the starting point and significantly factored into the Court's analysis in approving the class action settlement here. If the checks could have simply been mailed out, there was no need for a claims process to identify class members, to qualify them. What do you do, though, about the spousal issue, though? Isn't that one of the logistical issues in dealing with just sending out checks? It's not, Your Honor, for a couple of reasons. One being, on joint tax returns, the spousal information is included. They're required to put their Social Security numbers. They're required to have driver's license numbers. They're required to have addresses just the same as the direct filers. Secondarily, it also ignores that with respect to the in-kind relief afforded under the settlement, which the District Court did not address at all in its decision. There are a significant number of class members, presumably, who returned to Tax Act during the course of the 2024 tax year, and because of that ongoing relationship, the very notion that there are some number of class members out there that could not be reached, that relief could not have been granted, doesn't really ring true because Tax Act could have done that in the— Counsel, what's the relative time period for this? Isn't it 2018 to 2022? Yes, Your Honor. So we had COVID go through. Presumably, people moved. A lot of situations changed. Is it not—I mean, doesn't it make sense to ask people to let you know, yeah, this is still my correct address, or no, I did move? Well, Your Honor, that misses a couple things. The court's duty to analyze the settlement, that heightened duty because it is reversionary, it required the court to examine the evidence of that. There was no evidence in the record pertaining to those who moved, those who had any number of issues. There was no evidence in the record that would dispute the notion that there was an ongoing relationship with many Tax Act users for which Tax Act had records that it could have used, and it doesn't incorporate the fact that in the in-kind relief component of the settlement, it actually did require those people obtaining it to return to Tax Act, to log in, to use Tax Act services, to, again, provide their information, their names, addresses, email, telephone, driver's license, Social Security number, and that was during the claims administration period, and none of that factored into the District Court's decision, and that was abuse of discretion in large part because the amount of information Tax Act collects year after year for its users actually is more than what was asked of its users and the class members in the claims forms at issue here. So does this turn on it being reversionary, the heightened standard? Yes, Your Honor, this is a reversionary, and that was not accounted for in the District Court's opinion. The District Court regarded the settlement as non-reversionary because the cash component of the settlement was not reversionary, but as this Court made abundantly clear in Rose, the fact that one component of a settlement is not reversionary does not excuse, does not mean that the Court can allow another part of a settlement that is reversionary to go without that. But why is this reversionary? Why is the in-kind provision of access to those services reversionary? It's reversionary, Your Honor, because it required the users to return to Tax Act during the 2024 tax filing season. It required them to use Tax Act services, and it required them to also, before any of that, to fill out the claims form. So if you did not return to Tax Act, if you did not actually use the express service, and you did not separately fill out a claims form, even though you return to Tax Act, Tax Act has current information about you, more information than that's required in the claims form, you would not qualify for the in-kind relief. How, in your view, could the in-kind benefit have been made non-reversionary? Well, Your Honor, by its very nature, this in-kind benefit is, it would be reversionary. So it's not possible to do that? To make it non-reversionary, in your view? I agree, Your Honor. It's not possible for the in-kind benefit to be non-reversionary, because at the very least, even if there was no claims form, a user still had to return to Tax Act, and not only return to Tax Act, but use the expert assist service. So by its very nature, this sort of in-kind benefit is reversionary. And that means, at the very least, the court has to apply the heightened standard that this court discussed in Rose, that this court discussed in California Peach Kitchen, to that, because the concerns... It's reversionary, in your view, just because if the volume of people who show up is less, then they save money? Yes, Your Honor, that's exactly correct. And that was exactly what this court explained in Rose, with regard to the dance fee vouchers there. That if a benefit that is time limited, requires users to redeem it, and that means that even though no money has to exit Tax Act, it doesn't have to fund a common fund with respect to this benefit, it still retains the value of that if users don't avail themselves, don't qualify. So yes, Your Honor, it is a reversionary benefit. Mr. Pasternak, did you raise these objections before the district court? Your Honor, we did address the claims procedure before the district court, as to specifically regarding it as reversionary. I don't believe we used that terminology, and I don't believe we had to under Socillo, because that was a part of the court's opinion, and the court found that it was not reversionary. So there is that contradiction there in the court's opinion. Well, it seemed like there is a little more runway for your objections to take off in district court in this case, than the last two cases we were looking at. I mean, just to work through it, you didn't appear at the preliminary hearing? I had submitted, excuse me, my co-counsel had submitted a letter to the court before the preliminary hearing, which in response, the district court judge said that it was not taken in well regard, I believe. We did appear before the court. We submitted an objection in line with the requirements in the settlement agreement before final approval. We appeared at the final approval hearing, and we were afforded three minutes to present at the final approval hearing, Your Honor. Right. So you did have the opportunity to object, right? This isn't like what we were just facing in terms of the district court's analysis itself was insufficient. This was an objection to the settlement. Yes, Your Honor, we did object, and we did heavily and significantly address the issue of the problems of this claims-made procedure in our objection. But not the reversionary. You concede that? I don't believe I used the word reversionary in it. Well, it sounds like quite a bit turns on exactly that. Well, I think the two are fundamentally related issues. The reversionary adds force to the claims-made procedure argument, but the two go hand-in-hand because it's a very concept of there being the claims-made procedure here where tax acts records really have all that's necessary to pay benefits without a claims form that that is the issue we focus on, Your Honor. What are we supposed to do with the fact that I believe you had voluntarily dismissed the Pennsylvania action on kind of due to apparently very similar concerns that are present here, right? That would complicate the things that you're asking for here seem to be things that you decided you couldn't ask for in Pennsylvania. Perhaps that's unfair, but tell me why. That's not exactly correct, Your Honor. And the reason is we voluntarily dismissed the Pennsylvania action because James Kirkham and Matthew Sessoms are objectors here and filled out claims forms here. If this settlement is not ultimately approved, the dismissal and the district court action in Pennsylvania, it would be vacated and the case would be restored to active status. But didn't that involve similar complications in terms of, at least with the joint filers, similar complications about who gets to, I mean, who can file a joint claim and what's required to bring in the spouse on a joint filing and how that works, which, as I understand, played a material role in the approval of the settlement and the conditions that you're now challenging? Well, Your Honor, the merits of the joint filers claims, the merits of the direct claims, that is one component of the district court's analysis. And I think here was too large of a component. And the district court, contrary to the amended version of Rule 23, it did not consider the effectiveness of the claims distribution procedures. It contradicted itself in a number of respects, one being the difference between mandatory and maximum damages. And that, its analysis of the adequacy of the settlement. It also, when we raised the blow, it also directly erred in its analysis of whether it was significant that there was no injunctive relief component of the settlement because of the Missouri consent judgment. And the district court, it omitted the fact that in that consent judgment, it specifically states that it is, that other than the Missouri Attorney General, other than the parties to that consent judgment, no one else may enforce it. And the class members here are not third-party beneficiaries of it. And the district court did not consider that either. So yes, Your Honor, the merits are one component of the Bluetooth analysis, but there are other components. There are other requirements. They're still in Missouri. They're still subject to the control of the Missouri Attorney General, presumably will not be asleep at the switch. To a limited extent, Your Honor. And at most that would apply to members of the class here who are Missouri citizens. Because the Missouri Attorney General's authority under Perens Patria would be limited to representing its citizens. There would be no one able to enforce the consent judgment on behalf of the residents of the other 49 states. Counsel, I want to bring you back to an argument, and I'm not sure if I understood you correctly, so I need some clarification. In regards to a question prompted by Judge Johnstone about in-kind benefits and being reversionary, if the in-kind benefits were not a part of the settlement, is any other part of this settlement agreement potentially reversionary? I think you mentioned that the claims section would be, but I'm not sure if I understood that correctly. No, Your Honor. I will concede that the reversion aspect of the settlement are the in-kind benefits. As for the cash benefits, those are paid into a common fund, and those are not reversionary. That does not change the fact, though, that under Rule 23E2, as it currently reads, the district court still has to consider the effectiveness of the distribution procedures, which according to the advisor community, requires it to consider whether those procedures are unduly demanding, and the district court did not perform that analysis here, and that's significant. And I'll concede, Your Honor, that there are a great many cases in which a claims form is completely appropriate. I don't think this is one, because here you have a defendant who has records that have the name, telephone number, email address, social security number, driver's direct, and the spousal class numbers, but also for many, has a continuing relationship with them. But how many years? I mean, that's, I guess, the part that I'm stuck on is, you know, some of these were filed in 2018, but the settlement is... Well, Your Honor, I think that actually supports my argument, because it was incumbent on plaintiffs, it was incumbent on appellees to put before the court evidence, and the court didn't have that. The court didn't consider it, the court didn't ask about it. Its duty here under Rule 23 was to conduct an inquiry, and it didn't. Did you want to save time for rebuttal? Yes, Your Honor. Okay, all right, so we'll hear now... Thank you. Thank you. We will hear now from Mr. Joyce. Good morning, Your Honors. Paulina Brandler from Hammond Law here for the settlement class. Just before I begin, Mr. Joyce, who's representing Tax Act, and I would like to divide the argument subject, of course, to the court's questions. I would like to address the substantive fairness of the settlement, as well as the district court's adherence to the procedural standards required for final approval. Mr. Joyce will then address the risks that plaintiffs confronted in this case. Thank you. So, the objectors raised many different arguments as to what Judge Chabria did wrong and how he erred, but the truth of the matter is Judge Chabria did exactly what was required of him. He followed, he applied the heightened scrutiny to this pre-class certification settlement, as he was required to do, and he conducted a rigorous analysis by looking at every rule 23e factor and Churchill factors, applying them, and setting out his reasoning both in the final approval order at the final approval hearing, as well as at the preliminary approval hearing. The issues that the objectors raised, except for the reversionary issue, which they did not raise before the district court below, the issues were all briefed, the district court considered them, and again the district, unlike some of the final approval orders that have been discussed earlier today, the district court's final approval by no means is thin. It shows the court's rigorous analysis under rule 23e, and finally the court certainly addressed all the objections and provided reasoned response in overruling them. Can you focus on his arguments about the adequacy of the district court's analysis of the method of distribution? The claims form? Of course. We provided briefing to the district court. We gave a number of different reasons to explain why we believed the claim form was necessary in this case. As Judge Alba pointed out, the class is comprised of individuals who filed taxes between 2018 and 2022. So even though it is true the Tax Act had mailing addresses, it was likely that many of those were stale, and we're talking about a class of 10 and a half million class members. So yes, we could have mailed checks and probably spend roughly 10 to 11 million dollars doing so, and so spend... Is that in the record that it would have cost that much? No, but the postage, I guess, is 45 to 50 cents, and plus printing and stuffing, 10 million envelopes would have caused that. But in addition to that, because the addresses were stale, the checks likely would have been languishing somewhere in the back of a post office instead of being redeemed by the class members. But the claim rate has been... What was the rate here? Four percent, roughly. Okay, so I guess I take the objector's point to be you had the information to send it out. Sure, maybe some people had moved around, but probably not 96 percent of the people moved around. So couldn't you have done a little better? Well, I don't think so. Again, I think this was the most efficient way, as Judge Chabria agreed, of ensuring that most of the money was received by the class members and actually redeemed. And, but not only that, there, of course, were also other reasons as we briefed and as the Judge Chabria agreed, made sense. We also needed to, or the administrator rather, needed to confirm details about the married filers class. That was not readily available from Tax Act data, or at least the administrator did not have a way of figuring that out. And I think Mr. Joyce may have more information about that as it relates to Tax Act records specifically and why that was. Counsel, I'd like you to now address also the in-kind argument that it is reversionary. Why is it not? I'd be happy to, Your Honor. So two things. First of all, when courts address reversionary settlements, they are, as far as I'm aware, every single case we've looked at, courts are looking at cash funds, not at in-kind relief. And if we were to follow objector's logic, then every single settlement that provides this bonus of in-kind relief is reversionary and automatically creates some sort of a, you know, issue of collusion or self-interest. And in addition, not every single one. This is in-kind by the defendant. So it's not like credit monitoring cases or others. This is financially likely is going to have the effect that the defendant is going to save money. Oh, I hear your point. But, well, two things. So first of all, even if we were to say it is reversionary, which I'm not conceding because, again, it's an extra bonus, the court found that the settlement was fair, reasonable, and adequate based on the cash value alone. And in terms of there being any conflict, Judge Chabria actually awarded us only 10% of the actual redeemed in-kind relief. So there's no disproportionate portion of the value of in-kind relief going to class counsel. And I think that's what the reversionary aspect or the reversionary issues when raised are typically, that's the concern with reversionary settlements. Not present here. With respect to the in-kind benefit, I mean, obviously, if the response rate is lower, the cost of that goes down. So doesn't that, in some sense, just become an issue about whether or not there was adequate notice given to the class in order to get the claims rate up high enough? I'm sorry, you're just calling adequate notice? Correct. Well, there was email notice that was sent to the class and there were follow-up reminder emails sent as well. So the class was provided with sufficient notice about the benefits available under the settlement and how they can claim the in-kind relief. And also the class appeared on the Tax Act's website alerting them to the availability of in-kind relief. So I don't think notice was an issue and it also was not raised by the objectors. But the point is that given the adequacy of the notice in order to reach the class members and offer them the opportunity, the rate was going to be what it was going to be. There wasn't a situation where the value of the in-kind settlement was depressed by the fact that there was inadequate notice so that not enough people would show up to grab it. Again, I mean, it was made available to the class. We would love for claims rates in settlements to be higher than what they are, but they are 5% is a typical claims rate. By definition, they couldn't get the in-kind benefit unless they show up. But they were given the opportunity to show up. And counsel, I just want to confirm to use the Tax Act and get the in-kind benefits. They had to have had an email address on. Tax Act must have had their email address, right? Their correct email address. Could you use the program without having an email address? Could you use Tax Act without having an email address? I don't believe so. But I think Mr. Joyce will confirm that. I don't want to misstate what Tax Act might allow in some situations, but my understanding is you would need an email address for an electronic filing and use of the website. And indeed, that's how, I'm sorry, that's how email notice was provided to the class members. Oh, and I'm sorry, my colleague, Mr. Hammond, is telling me that there is actually evidence that it was less expensive than mailing checks to send checks electronically. And that's in the record, I believe, at page 656. Page what? 656. Okay. And so from that, we're to take it less money was spent on administrative costs, therefore there was more money to give to the class members. Correct. And not just less, but under $2.5 million or less will be spent on administration costs with any remaining funds from that going to the class. And this is, I just want to say that I'm sure this Court knows claims made settlements are typical in today's environment and sending checks is not as efficient and or economical. Does the Court have any other questions? Well, I'll just briefly conclude that. I see I just have very little time. The objectors certainly have not met the strong, there's burden of showing that there's a strong evidence that the District Court clearly abused its discretion. Again, the Court conducted a rigorous analysis under Rule 23E factors, and there's plenty in the record to support that, both in the hearing transcript from preliminary and final approval, as well as in the final approval order itself. All right. Thank you, counsel. Thank you. And we'll hear now from Mr. Joyce. Thank you, Judge Collins. May it please the Court. Eamon Joyce of Sidley Austin on behalf of Tax Act. I want to briefly address the elephant of the room, the arbitration provision, because I hear my friend still challenging the value of this settlement, right? The class got a 17.5 non-reversionary cash fund in the face of arbitration. Judge Chhabria recognized that on ER2, ER3, ER5. He refers to the risks that existed here, right? That's the number one factor under 23E2C Romanet 1. And my friends have nothing to say about it, nothing to say in their briefs or otherwise. And I think two things are important to understand about this. This settlement was reached in February 2024 before the EDPA ruled, which happened the next month. So if anything, they got out at the right time. They got money that was not going to be on the table a month later. And then two, the district court approval happened in December 2024 before the Third Circuit had ruled on arbitration. And the Third Circuit, interestingly, our friends on the other side got to take an appeal, essentially obviate the one-way street provisions because we took an appeal on the partial denial. They challenged all the reasons that applied to the arbitration that was granted. The Third Circuit rejects them across the board. So what does that mean, right? Substantively, one, direct filers certainly go to arbitration. And two, these joint filers were a class killer. There's no way to do this. Because it would be individualized whether or not they had the agency to... That's exactly right, Your Honor. I mean, the Third Circuit remanded essentially for many trials around agency, third-party beneficiary, estoppel theories, all of which are highly fact-sensitive and depend on the relationship between oneself and their spouse. Let me segue into the claims process, right? Because I think the fact that there's a $17.5 million common fund feeds into the claims dynamic. This is not a true claims-made settlement where there's some interest, perceived interest on the part of defendants to drive a claims rate down. The money's out the door. The defendant is paying it out, irrespective of who receives it. That's the ground on which the settlement was reached. And the district court got that exactly. It makes a square finding on ER-5 that this was the most efficient way to make sure that money ended up in the hands of claimants. I'd say to my friend's arguments on the other side about not being that the courts have applied those burdens in exactly the opposite way, pondering an unbound position of this court, right? Where there were addresses, this court faulted. The objectors were not pointing to evidence that everybody, essentially the different parts of the class, could have gotten direct payment. Two, there's just no such evidence here, given what you've recognized, Judge D'Alba, and I put a little more meat on those bones, right? If you look at the declarations by the claims administrator here, 10.6 million notices were by email, and that's because that's what the current data was. And then if you look at, say, ER-203, paragraph 17, postcard notices that went out because of non-delivery of emails, 205,000 postcard notices were returned as undeliverable, and they could only find updated addresses for 94,000 of those. If you look at ER-720 and seven, excuse me, 720, paragraphs 21 and 22, Kroll's declaration talks about how the USPS databases at issue only go back four years. Here we are in 2026, even if your honors approved this settlement quickly, that's just a reach back to 2022. Anyone who moved between 2018 and 2022 is just lost into the ether. And so we did this in the most efficient way possible. The other thing I'd point out, right, my friends submitted a declaration, my friends being class counsel, noting other settlements of this type. You'll find that at ER-855. Those settlements invariably involved a claims process, including the Facebook internet tracking litigation that later came before this court and was affirmed. And my friends on the other side don't cite a single settlement without a claims process. My understanding is that those ones typically end up in employment context, Fair Labor Standards Act claims make sense. You've got ACH information. You can transfer fairly straightforwardly. But I think even those kinds of cases have come before this court without direct payment. Let me, if I may, in the short time remaining, touch on the in-kind benefit. My friend on the other side never challenged this as reversionary below. I don't think that's an instance quite like the Saucillo case. To my knowledge, this court has no case law treating in-kind provisions as reversionary, right. California Pizza Kitchen, I recognize their honor dissented there, but no one called out the relief there as reversionary. The Yahoo data breach settlement, no one called that out as reversionary. And then I think what's most relevant, right, is all that reverted or potentially reverted was potentially fees on whatever the claims process was. And I don't think we briefed it this way. And this analogy didn't come to me until late. But look, the district court treated the in-kind relief much as district courts are instructed to do under 28 U.S.C. 1712 for coupon relief. He didn't award any fees on anything but what was redeemed. And then, as my friend at class counsel said, he knocked that down. He didn't give them 25 percent on it. He gave them 10 percent. And here there's not even, based on the way this played out, you don't even have to worry about a cypre because the cypre was set up because we were going to administer it two different times, right, that the common fund would be paid out at once. And then later on down the line, after the tax period ended, the in-kind relief would be handled. And that brings me to my very last point. And I thank the court's indulgence. The argument they make about couldn't this have all been done through the 2024 tax period? Not only is that below, but it doesn't make sense, right, because that would have delayed the entire settlement. This settlement went to final approval in late 2023 to use the submissions of forms to tax act. That doesn't wrap up until October of 2025. So if that's the claims process they envision, they're going to keep class members waiting for an additional two years just to avoid what we came up with, which is an ordinary email-based claims process. Thank you, your honors. Thank you, counsel. All right, we'll hear rebuttal. Thank you. May it please the court again. There are two points I want to quickly address. First, the elephant in the room. The settlement was structured so that the in-kind relief will be provided in the 2024 year tax year. I think this court really said it very nicely in Rose where it questioned in footnote eight of the district court did not even consider the number of dancers who still worked in the nightclubs. And it was getting to that point to address of how many people should have gotten the in-kind relief. And the district court didn't consider that here. And right now there's been a lot said about how many people the relief could provide to because we don't know with the years 2018 to 2022 and other ways to validate that. Well, we also don't know, but I think defendants know of how many people came into 2024 year tax year, provided their information again, and they walked away with nothing because they didn't file a claims form. And to my second point, very quickly, I think there's been no dispute listening to counsel that the district court didn't address the reverter correctly. It never addressed the unduly demanding standard. It never addressed the distinction between mandatory and minimum damages, even though earlier in the case it found that issue important and required supplemental briefing. And it never addressed paragraph 19 in the mid-story consent judgment. Thank you. Thank you, counsel. The case just argued will be submitted and the court will take a five-minute recess.
judges: COLLINS, JOHNSTONE, ALBA